NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2117-16T4

UNITED SERVICES, INC.,

 Plaintiff-Appellant,

v.

CITY OF NEWARK,

 Defendant-Respondent.
____________________________________________

 Argued February 28, 2017 – Decided April 17, 2017

 Before Judges Messano and Guadagno.

 On appeal from an interlocutory order of the
 Superior Court of New Jersey, Law Division,
 Essex County, Docket No. L-5010-16.

 Gabriel H. Halpern argued the cause for
 appellant (Pinilis Halpern, LLP, attorneys;
 Mr. Halpern, on the brief).

 Handel T. Destinvil, Assistant Corporation
 Counsel, argued the cause for respondent
 (Kenyatta K. Stewart, Acting Corporation
 Counsel, attorney; Mr. Destinvil, on the
 brief).

PER CURIAM

 By our leave granted, plaintiff United Services Inc. (USI)

appeals from a December 16, 2016 Law Division order which
vacated temporary restraints previously entered against

defendant City of Newark, and denied plaintiff's application for

a preliminary injunction to prevent Newark from proceeding with

public contracting for janitorial services for city-owned

buildings. After granting leave to appeal, we filed an amended

order denying USI's request to enjoin Newark from receiving

responses to its solicitation for proposals, but enjoined Newark

from awarding a contract based on those solicitations pending

this appeal.

 USI has been providing janitorial and maintenance services

for Newark since approximately 2008, after a previous contractor

defaulted on its contract. These services have been provided

pursuant to emergency contract extensions.

 On March 29, 2016, Newark advertised bid specifications for

contracts to provide "Janitorial Services Part A and B" and

"Germicide" services for forty-eight of its buildings. The bid

specifications were sent to thirty-nine vendors, as well as the

Service Employees International Union Local 32BJ (Local 32BJ).1

 The specifications provided that "[Newark] reserves the

right to reject any and all bids as is in the best interest of

1 Local 32BJ is the largest property services union in the
country with approximately 145,000 members nationwide and 10,000
members in New Jersey.

 2 A-2117-16T4
the City." Bids were due on April 28, 2016, and were opened and

read to the public at that time. Eight proposals were received

for janitorial services, and seven proposals were received for

germicide services.

 On April 28, 2016, Local 32BJ sent USI a letter informing

it of the Union's intent to organize its employees should USI be

awarded the contract. Following the opening of the bids, an

Evaluation Committee reviewed the bid packages to determine the

"lowest responsible bidder."

 It is not disputed that USI was the successful bidder for

the contract. In a certification, USI's president, Raymond

Pardo, maintained that USI's bid was approximately $1,000,0002

less than the second lowest bid. USI's employees were not

members of Local 32BJ, but Pardo stated the employees of the

next three lowest bidders are members of Local 32BJ.

 On June 28, 2016, Jerome Wakefield, the Supervising

Procurement Specialist in Newark's Department of Purchasing,

sent a letter to all bidders notifying them of Newark's

intention to reject all bids to allow Newark to revise the

specifications.

2 In its brief, USI maintains its bid was $3 million lower.
Absent proof in the record, we adopt the motion judge's figure.

 3 A-2117-16T4
 In a certification dated October 6, 2016, Wakefield stated

the Evaluation Committee determined there were a number of

"ambiguities" in the bid specifications "that may have had the

potential to discourage potential bidders." As a result,

Wakefield determined it was in Newark's best interests to

"reject all bids and substantially revise the specifications,

pursuant to N.J.S.A. 40-A:11-13.2(d), to correct those

ambiguities."

 One of the ambiguities Wakefield identified in the March

29, 2016 bid specifications stated: "[b]idders may bid on

individual items[], except as otherwise specified" and "[i]f not

specified, no bid shall be accepted which seeks to sub-divide

any section or grouping of related items."

 On July 19, 2016, USI filed a complaint against Newark

seeking to enjoin the rebidding of the janitorial contracts, and

to compel defendant to award the contract to plaintiff because

plaintiff was the lowest bidder.

 On August 3, 2016, the Newark Municipal Council passed a

resolution authorizing the use of competitive contracting

pursuant to N.J.S.A. 40A:11-4.1 to procure custodial services.

Newark issued a competitive contract request for proposals (RFP)

on September 13, 2016, with a due date of October 13, 2016. The

new RFP indicated that "the City will make its final selection

 4 A-2117-16T4
based upon such factors as deemed by the City to be in its best

interests." Further, in addition to the Model Evaluation

Criteria provided in N.J.A.C. 5:34-4.2, defendant set forth the

following criteria: thirty-five percent weight to company

overview and qualifications; twenty-five percent to approach and

implementation; and forty percent to proposed contract cost.

Moreover, the RFP split the contract into eight separate parts,

with a set-aside for Qualified Minority Business Enterprises

(MBE) for three of the locations. The revised bid

specifications also eliminated the previous requirements of

posting surety and performance bonds.

 On September 23, 2016, USI filed an order to show cause to

enjoin Newark from soliciting and receiving bids through the

competitive contracting process. USI argued that it would

suffer irreparable harm if it is not awarded the contract it is

entitled to. USI further argued that because this is a public

bidding issue, public interests are at stake.

 On September 26, 2016, the motion judge granted temporary

restraints against Newark. On October 14, 2016, the judge

denied USI's motion for expedited discovery, finding that the

motion would "overly burden the defendant" and that the

opposition papers would provide names of those involved in the

matter.

 5 A-2117-16T4
 On December 9, 2016, the judge vacated the temporary

restraints and denied USI's application for a preliminary

injunction. On appeal, USI maintains the judge applied the

wrong standard in denying its motion for temporary restraints

and misunderstood its arguments; interlocutory relief is

necessary to preserve the status quo pending trial; Newark's

right to reject all bids is not unfettered; Newark has

misrepresented its reason for rejecting all bids; the

Competitive Contracting Statute prohibits Newark from changing

the competitive bidding after it has opened public bids for the

same work; Newark's inclusion of representatives of Local 32BJ

and/or other contractors in the procurement process is collusive

and violates State law; Newark may not object to ambiguities in

its own bid specifications; Newark's claim that it is making

substantial changes to the bid specifications does not comport

with the intention of the statutes or the public bidding laws;

and Newark's reasons for making specific changes and

incorporating them in the RFP make no sense and are not in the

interests of Newark and therefore evidence manipulation of the

contract award.

 In its complaint, USI alleged its bid was the lowest by a

substantial margin and would have resulted in millions of

dollars in savings by Newark. Newark does not deny this claim.

 6 A-2117-16T4
USI also claimed Newark's asserted reason for rejecting all bids

was a "subterfuge" and it sought to direct the bids to a company

which is unionized and represented by Local 32BJ which "directly

or indirectly contributed hundreds of thousands of dollars to

the election campaigns of Newark officials." Specifically,

Local 32BJ formally endorsed Mayor Baraka's candidacy in the

2014 mayoral campaign. Afterward, Mayor Baraka stated that he

was "look[ing] forward to working with 32BJ as part of the

movement to create a more fair and just city."

 In support of this claim, USI submits a certification of

its president, Raymond Pardo alleging Newark has intentionally

withheld payments to USI to cause financial hardship; between

2011 and 2016, Newark attempted to direct janitorial bids to a

favored bidder; Newark attempted to bribe a USI employee to

divulge confidential information; and USI was excluded from

secret meetings Newark held with contractors to discuss

information about the bid. Most troubling is Pardo's allegation

that he was advised by a Newark official that representatives of

Local 32BJ were attending meetings to draft new specifications

which were tailored to eliminate USI as the successful bidder.

 The motion judge rejected USI's claim that it was

disadvantaged by the opening of the public bids, because USI was

privy to the amounts submitted by the unsuccessful bidders. We

 7 A-2117-16T4
disagree. It is not disputed that USI's bid was substantially

lower than the next lowest bid. In any rebid, the unsuccessful

bidders now have the advantage of knowing the lowest bid. By

contrast, USI's knowledge of the unsuccessful bids is useless.

 USI also maintained that Newark violated N.J.S.A. 40A:11-41

by inserting a specification in the RFP requiring qualified MBEs

to only include minority group members who were New Jersey

residents, thereby eliminating USI as a qualified MBE as one of

its members recently purchased a house in Florida. The judge

rejected this claim finding that the Local Contracts Law "does

not prohibit a specification from requiring a bidder be a

resident of a state." Actually, the statute does prohibit

residency requirements unless it can be demonstrated that "the

physical proximity of the bidder is requisite to the efficient

and economical performance of the contract." N.J.S.A. 40A:11-

13(b). Although this residency requirement has apparently been

removed from subsequent RFPs, USI would have been permitted at

trial to prove that the specification did not meet the N.J.S.A.

40A:11-13(b) requirement, and was included in the initial RFP in

an attempt to exclude USI from the bidding process.

 Applications for a stay pending appeal are governed by the

standard outlined in Crowe v. De Gioia, 90 N.J. 126, 132-34

(1982). A party seeking a stay must demonstrate that "(1)

 8 A-2117-16T4
relief is needed to prevent irreparable harm; (2) the

applicant's claim rests on settled law and has a reasonable

probability of succeeding on the merits; and (3) balancing the

relative hardships to the parties reveals that greater harm

would occur if a stay is not granted than if it were." Garden

State Equal. v. Dow, 216 N.J. 314, 320 (2013). Each of these

factors must be "clearly and convincingly" demonstrated.

McKenzie v. Corzine, 396 N.J. Super. 405, 414 (App. Div. 2007).

 Although generally, all four factors must weigh in favor of

injunctive relief, ibid., we have held that "'a court may take a

less rigid view' of the Crowe factors and the general rule that

all factors favor injunctive relief 'when the interlocutory

injunction is merely designed to preserve the status quo.'"

Waste Mgmt. of N.J., Inc. v. Morris Cty. Mun. Utils. Auth., 433

N.J. Super. 445, 453 (App. Div. 2013) (quoting Waste Mgmt. of

N.J., Inc. v. Union Cty. Utils. Auth., 399 N.J. Super. 508, 520

(App. Div. 2008)). Clearly, USI seeks to preserve the status

quo and its application must be examined under the more relaxed

standard.

 The motion judge found USI had not shown irreparable harm

because Newark had a "right under N.J.S.A. 40A:11-4.1 and

N.J.S.A. 40A:11-4.3 to utilize competitive contracting as

opposed to public bidding." This conclusion ignores USI's

 9 A-2117-16T4
status as the lowest bidder and suggests that Newark is free to

peremptorily reject USI's bid without justification. It is not.

See N.J.S.A. 40A:11-13.2 (defining those circumstances whereby

the contracting unit may reject all bids).

 The motion judge also determined that the legal right

underlying USI's claim is unsettled. However, "the basis for

the claim that a publicly-advertised contract should . . . be

awarded to a bidder who has . . . [met] material bid

requirements . . . is not doubtful but well-established." Waste

Mgmt., supra, 433 N.J. Super. at 452 (citing Meadowbrook Carting

Co. v. Borough of Island Heights, 138 N.J. 307, 313 (1994)

("publicly advertised contracts must be awarded to 'the lowest

responsible bidder.'" (in turn citing N.J.S.A. 40A:11-6.1)).

This right is subject only to Newark's ability to either reject

all bids and proceed to competitive contracting, or otherwise to

conclude USI is not a "responsible" bidder.

 Particularly when the public interest is at stake, "[t]he

power to impose restraints pending the disposition of a claim on

its merits is flexible[.]" Waste Mgmt., supra, 433 N.J. Super.

at 453.

 This less rigid approach, for example, permits
 injunctive relief preserving the status quo
 even if the claim appears doubtful when a
 balancing of the relative hardships
 substantially favors the movant, or the

 10 A-2117-16T4
 irreparable injury to be suffered by the
 movant in the absence of the injunction would
 be imminent and grave, or the subject matter
 of the suit would be impaired or destroyed.

 [Id. at 454 (citations omitted)].

 We perceive no harm to any of the parties by reinstating

the stay, and the balancing of the equities involved militate in

favor of injunctive relief.

 That portion of the December 16, 2016 order denying USI's

application for a preliminary injunction against Newark is

reversed, and our January 31, 2017 order enjoining Newark from

making any award of the contract is continued until resolution

of the underlying complaint. The matter is remanded to the

trial court. We do not retain jurisdiction.

 11 A-2117-16T4